**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OFFDEAL, INC., | |
| Plaintiff, | Civil Action No. 1:26-cv-04094 |
| v | |
| SAM MIELKE, | |
| Defendant. | |

**COMPLAINT SEEKING TEMPORARY RESTRAINING ORDER AND PRELMINARY INJUNCTION IN AID OF ARBITRATION AND EXPEDITED DISCOVERY**

Plaintiff OffDeal, Inc. ("Plaintiff," "OffDeal" or the "Company"), by and through its attorneys DLA Piper LLP (US), for its Complaint against defendant Sam Mielke ("Defendant" or "Mielke"), alleges, upon personal knowledge as to itself and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.     Defendant is a former senior ranking M&A Advisor to OffDeal, an AI-powered investment bank that caters to smaller companies and transactions. As the result of an investigation that is ongoing, OffDeal recently unearthed substantial and indisputable evidence that Defendant intentionally and maliciously misappropriated, misused and unlawfully disclosed – and in some instances actually deleted from the Company's networking systems – substantial amounts of OffDeal's proprietary and confidential information, including highly sensitive and proprietary data, information and corporate deal level strategies to which he and only a select few others at the Company had access, while still employed by the Company, all in an overt effort to unlawfully compete with the Company. Defendant's unlawful misconduct (discussed in further detail below) centers around his exploitation of both the trust placed in him as an employee of the Company in

1

1632119500.2

a significant role and his corresponding access to OffDeal's valuable information and business relationships, to achieve a competitive advantage for himself and/or his future employer(s).

2.     OffDeal files this Complaint, in aid of arbitration (as is required and permitted by the parties' arbitration agreement[1]) to temporarily and preliminarily enforce the various covenants contained in the Worksite Employee Acknowledgement, dated February 5, 2025 (the "WEA"), and the Proprietary Information and Inventions Agreement, dated May 15, 2025 (the "PIIA"), both of which Defendant executed in consideration for his employment by OffDeal,[2] as well as its rights under applicable law, in order to (i) stop Defendant from continuing to materially breach, among other things, his contractual, fiduciary and other common law duties which he invariably has owed, and continues to owe, to OffDeal; (ii) immediately prevent Defendant from causing and inflicting further irreparable harm and injury on OffDeal as a result of his misappropriation of the Company's trade secrets and proprietary information and deletion of mission critical data and information; (iii) recover, from Defendant, and any and all persons and/or entities working in concert with him, any and all OffDeal property, including Proprietary Information (as defined below), intellectual property and proprietary trade secret data and information, the sole ownership of which lies with OffDeal, which upon information and belief is and continues to be in Defendant's (and all such persons working in concert with him) unlawful possession; and (iv) prevent Defendant from further destroying, or further disposing of any evidence or other materials, in any form, relating to this action and the claims and allegations set forth in this Complaint.[3]

---

[1] A copy of the applicable arbitration agreement is attached as Exhibit D to the Declaration of Ori Eldarov ("Eldarov Decl.") filed in support of the Company's application for temporary and preliminary injunctive relief.

[2] Copies of the WEA and PIIA are attached to the Eldarov Decl. as Exhibits B and C, respectively.

[3] As set forth herein, Defendant already has blatantly destroyed substantial evidence directly implicating his unlawful conduct by deleting emails and other data implicating him in the misappropriation of OffDeal's Proprietary Information.

2

## JURISDICTION AND VENUE

3.     This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 in that this case arises under various federal statutes, includes 18 U.S.C. § 1830 et seq. and 1836 et seq.  The Court possesses supplemental jurisdiction over Plaintiff's remaining common law claims pursuant to 28 U.S.C. § 1367(a).

4.     The Court has personal jurisdiction over Defendant because he resides in New York, and some of the causes of action asserted by this Complaint arise out of Defendant's breaches of the PIIA, which is governed by New York law.

5.     Venue is proper in the Southern District of New York because both Plaintiff and Defendant reside in New York County, and a substantial part of the events giving rise to Plaintiff's claims occurred within the jurisdiction of the Southern District of New York.

## THE PARTIES

6.     OffDeal is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in New York, New York.

7.     Sam Mielke is an adult individual, domiciled in the State of New York.

## FACTUAL ALLEGATIONS

A.     *OffDeal*

8.     Founded in 2023 and launched in 2024, OffDeal is a startup investment bank designed to cater to small businesses and smaller scale acquisitions using Artificial Intelligence (AI) technology.

9.     The company's proprietary AI broker agents identify potential acquisition targets and match them with institutional buyers, while OffDeal's human advisers guide the process and assist the buyers and sellers close their deals.

3

10.    OffDeal has served as a financial advisor for approximately a dozen transactions since its founding.

11.    Since its founding, OffDeal has spent millions of dollars and substantial time and human capital developing strategies, market presence, client relationships and confidential information to cultivate new business and maintain relationships in the industry.

**B.    *OffDeal's Hiring of Mielke***

12.    Defendant was hired by OffDeal in February 2025 as an M&A Advisor.[4]

13.    Defendant was highly compensated by OffDeal.  He was paid an annual salary of $100,000 (which was subsequently raised to $200,000), was eligible to participate in the Company's incentive compensation plan, and received an option to purchase a significant quantity of shares of the Company's common stock.

14.    Counting the commissions he received, Defendant was the highest paid employee at OffDeal

15.    In connection with the commencement of his employment with OffDeal, Defendant was required to sign a Proprietary Information and Inventions Agreement ("PIIA").[5]

16.    Pursuant to the PIIA, Defendant agreed "that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute 'Proprietary Information'" and further agreed that he would "hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information."

---

[4] *See* Eldarov Decl., Ex. A.
[5] *See* Eldarov Decl., Ex. B.

1632119500.2

17.     Pursuant to the PIIA, Defendant also agreed that "[u]pon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies)" (which he failed and refused to do).

18.     Pursuant to the PIIA, Defendant also agreed that "during the term of my employment with Company (whether or not during business hours), I will not engage in any activity that is in any way competitive with the business or demonstrably anticipated business of Company, and I will not assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of Company."

19.     Defendant further agreed in Section 9 of the PIIA that "any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond."

20.     Defendant also was required to sign a Worksite Employee Acknowledgement ("WEA") as a condition of his employment.[6]

21.     Pursuant to Section 4 of the WEA, Defendant agreed that he "[has] a duty to maintain the confidentiality of any Confidential Information [he] access[es] or receive[s] and to use it only for purposes of performing [his] job."

22.     Section 4 of the WEA also provides that Defendant "will honor and comply with all obligations to protect and safeguard such Confidential Information, will keep it in the strictest confidence, and will not disclose it to anyone (other than [OffDeal] personnel who need to know such information in connection with their work) or use it, except in connection with [his] work for" OffDeal.

---

[6] *See* Eldarov Decl., Ex. C.

23.     Finally, Section 4 of the WEA provides that Defendant "will exercise due diligence and reasonable care when handling, maintaining, transferring, disposing or storing any Confidential Information so as to not risk unauthorized use or disclosure of the information or violate any federal or state privacy laws."

24.     Without Defendant's agreements to abide by the covenants in the PIIA and WEA, including but not limited to the restrictions on the use and disclosure of the Company's Proprietary Information, OffDeal would not have hired him and made him privy to its Proprietary Information.

25.     Additionally, as set forth above, Defendant received ample consideration for the obligations in the PIIA and WEA.

26.     During and through his employment with OffDeal, Defendant became intimately familiar with the Company's business strategies and the quintessential blueprints of its business plans, along with the Company's clients' confidential information.

27.     As an M&A Advisor, Defendant was responsible for assisting with the Company's business strategy and originating and executing M&A transactions for the Company, and was trusted and expected to cultivate and protect OffDeal's business relationships.

**C.      _OffDeal's Confidential and Proprietary Information_**

28.     OffDeal takes reasonably calculated steps to protect its confidential information and trade secrets, which include (among other things) lists of potential acquisition targets, pricing information, counterparty lists, marketing information, market research, financial data, credit and other risk analysis and limits, techniques, models, and its goodwill among its actual and potential clients.

29.     In particular, the software and data infrastructure upon which the company is built is highly proprietary.

1632119500.2

30.    By safeguarding its confidential information OffDeal is able to compete in the highly dynamic mergers and acquisitions industry.

31.    In his role as M&A Advisor, Defendant was entrusted with OffDeal's confidential and proprietary information and trade secrets that were generally not disclosed publicly or to OffDeal employees who did not have a need to know.

**D.    _Mielke's Misconduct and Misappropriation of Confidential Information_**

32.    In April 2026, a review of Defendant's Company-issued computer and systems access history revealed that, over a period of months (months in which Defendant knew he would be departing the Company), he set in motion a plan designed to intentionally misappropriate a vast array of Proprietary Information, including sensitive client and prospective client and related deal (and potential deal) data and information, to which he and only a select few others had access.[7]

33.    This misconduct included the following:

- On November 7, 2025, Defendant initiated a "mass download" of 127 separate files in a single-day session spanning approximately five hours, plus 11 files (including 7 ZIP archives) reconfigured from private access to "anyone with the link" between November 2025 and March 2026;

- Six of the eleven files Defendant reconfigured to "People with link" visibility were subsequently downloaded by anonymous external users — individuals outside OffDeal's domain accessed the files through the public links Defendant had created — on 16 separate occasions between November 2025 and March 2026

- On at least nine instances between February 2025 and February 2026, Defendant forwarded confidential client materials, internal OffDeal documents, or privileged litigation materials from his work email to his personal email account;

- Between March 30, 2026 and April 2, 2026, Defendant deleted an investor contact record and two seller lead records from the Company's CRM. The investor contact deletion (an Investor at a competing private equity firm in active communication with Defendant) occurred at 12:26:27 PM ET on March 30, 2026 — approximately 27 seconds after Defendant received the second of two inbound emails from that Investor regarding multiple OffDeal pipeline opportunities;

---

[7] _See_ Eldarov Decl., Exs. E, F.

7

- On March 23, 2026, Defendant executed eight (8) consecutive CSV exports of distinct seller lead lists from OffDeal's internal CRM in approximately six minutes, totaling 18,144 prospective target companies across five industry verticals (commercial landscaping, paving, fire & life safety, commercial security / access control, and youth sports training); and

- In March 2026, Defendant exchanged emails with a private equity firm (the "Competitor PE Firm") regarding multiple specific OffDeal pipeline opportunities, including one active sell-side mandate and two opportunities OffDeal was in advanced discussions to take on as exclusive sell-side mandates. The Competitor PE Firm competes with OffDeal for deal flow: like other private equity buyers, it prefers to source acquisitions bilaterally — directly from sellers, without the involvement of a sell-side advisor — in order to avoid the competitive auction dynamics that drive up acquisition prices in OffDeal's sell-side processes. Four of the six industry sectors the Competitor PE Firm separately identified to OffDeal as areas of active interest correspond directly to lead lists Defendant exported from the Company's CRM on March 23, 2026 (commercial paving, commercial landscaping, fire & life safety, and commercial security / access control). Youth sports training, a fifth vertical Defendant exported on the same date, is a sector in which the Competitor PE Firm holds an existing platform investment publicly disclosed on its portfolio website. The Competitor PE Firm is also a registered buyer on OffDeal's listing platform, through which it has access to certain OffDeal pipeline opportunities and teasers; the misappropriation alleged herein concerns OffDeal's internal CRM lead lists and other proprietary records that are not available through the platform.

34.    In addition to the foregoing examples, a further review of Defendant's work email following his offboarding revealed numerous instances of emails containing confidential client and/or deal information, and privileged information related to active or contemplated litigation and Proprietary Information, Defendant forwarded to his personal email account (samdmielke@gmail.com).

35.    The Proprietary Information misappropriated by Defendant has significant value to OffDeal and would also benefit OffDeal's competitors if wrongly disclosed.

36.    Defendant stands to benefit financially from the Proprietary Information that he has misappropriated.

1632119500.2

37.     Upon information and belief, Defendant has used and shared, or intends to use and share the Proprietary Information with one or more of OffDeal's competitors so that it can be used for Defendant's and such competitors' financial benefit.

**E.**     ***Termination of Mielke's Employment***

38.     OffDeal terminated its at-will employment relationship with Defendant on April 2, 2026, based on its discovery of his misappropriation of the Company's Confidential Information (which also violated his obligations under the PIIA and WEA).

39.     Following the termination of Defendant's employment, OffDeal uncovered numerous additional examples of emails where Defendant had forwarded the Company's confidential, proprietary, sensitive, and/or privileged information to his personal email address without authorization.  It further uncovered numerous instances where Defendant purposely deleted Company information in order to sabotage the Company's ability to conduct certain high-profile and potentially lucrative deals.

40.     When confronted with this evidence, Defendant denied that he had done anything wrong and claimed that he had "wiped" all of his devices so no information was recoverable.

41.     Even if true (which is highly doubtful), Defendant's act of "wiping" his devices violated the terms of his restrictive covenant agreements and is clear-cut evidence that Defendant was engaged in nefarious conduct.[8]

42.     Following the termination of Defendant's employment, Plaintiff's management tried to engage with Defendant and negotiate a separation agreement including a certification confirming, among other things, that (i) he had not improperly used any Company confidential

---

[8] The timing of Defendant's "wiping" of his devices is entirely suspect, and even Defendant's counsel could not indicate when Defendant wiped his devices.  A forensics examination of Defendant's devices will be the only way in which to determine, if at all, when he purportedly wiped his devices.

1632119500.2

information; (ii) he had deleted any Company confidential information still in his possession, custody, or control; and (iii) he had not provide any Company confidential information to any third parties.

43.     Defendant refused to sign the proposed separation agreement and certification.

44.     In response to Defendant's failure to cooperate and refusal to provide the certification which Plaintiff had requested, Plaintiff, on May 5, 2026, though counsel, sent him a letter reminding him of his obligations and demanding that he immediately cease and desist any further conduct violating his contractual and common law obligations to the Company.[9] As of the date of filing this Complaint and application for temporary and preliminary restraints, Defendant has not responded.

**F.     _Irreparable Harm and Need for Immediate Injunctive Relief_**

45.     Absent injunctive relief from this Court, the damages OffDeal will suffer as a result of Defendant's actions will be irreparable and incalculable.

46.     Given that Defendant had access to OffDeal's proprietary business strategies, lead data, and confidential client materials, to allow Defendant to misappropriate, unlawfully use and inappropriately disseminate OffDeal's highly confidential and proprietary business information and trade secrets for unlawful competitive purposes could be devastating to the Company.

47.     Should Defendant continue to unlawfully utilize OffDeal's Proprietary Information and/or otherwise continue to violate the PIIA and WEA, OffDeal will suffer the irreparable harm that accompanies the loss of business and invaluable goodwill.

---

[9] _See_ Eldarov Decl., Ex. G.

48.     Likewise, if Defendant is allowed to retain the extensive Proprietary Information, Defendant and any potential OffDeal competitor he is associated with could use such information to unfairly compete against OffDeal.

49.     The harm OffDeal would suffer from the use and disclosure of such Proprietary Information cannot be overstated and cannot be remedied by a monetary award.  The loss of goodwill and customers accompanying such misconduct would cause catastrophic and irreparable damage to OffDeal.

50.     Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief, in aid of arbitration, enjoining Defendant from further unjustly enriching himself at OffDeal's expense by further misappropriating Proprietary Information.  OffDeal will also seek to recover monetary damages, to the extent provable, in arbitration.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

51.     Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

52.     The WEA is a binding contract between OffDeal and Defendant.

53.     The PIIA is a binding contract between OffDeal and Defendant.

54.     By his conduct, as alleged above, Defendant breached the WEA and PIIA. Specifically, Defendant his breached his obligations under both agreements to, *inter alia*, protect and not improperly use or disclose any Proprietary Information, and return any and all such Proprietary Information upon the termination of his employment.

55.     Defendant's conduct, as alleged above, also breached his obligation under the PIIA to "not engage in any activity that is in any way competitive with the business or demonstrably

11

anticipated business of Company, and [] not assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of Company."

56.    OffDeal performed all of its obligations under the WEA and PIIA.

57.    As a direct and proximate result of Defendant's conduct, OffDeal has suffered and continues to suffer the disruption of its business relationships, dilution of goodwill, injury to its reputation, and devaluation of its business.

58.    Defendant's breaches of the WEA and PIIA have caused and will continue to cause OffDeal substantial irreparable injury, including harm to its reputation, and the immeasurable diminution in value of its trade secrets and business, as well as actual damages and lost profits. Defendant has been unjustly enriched by his misappropriation of OffDeal's Proprietary Information.

59.    Defendant's breaches of the WEA and PIIA were intentional, knowing, willful, malicious, fraudulent and oppressive.

60.    Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary and preliminary injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

**SECOND CAUSE OF ACTION**
**(MISAPPROPRIATION OF CONFIDENTIAL INFORMATION)**

61.    Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

62.    Defendant has contractual and common law duties not to misappropriate the OffDeal's Proprietary Information, which includes trade secrets and other proprietary confidential

1632119500.2

information, and not to reveal such Confidential Proprietary to any third parties outside of the Company.  Nonetheless, in violation of these duties, Defendant misappropriated, disclosed, and utilized such Proprietary Information in order to enrich himself at the expense of OffDeal.

63.    Upon information and belief, OffDeal's Proprietary Information and intellectual property of the Company remains stored in, among other places, e-mail folders and/or electronic files belonging to Defendant and the third parties to whom Defendant unlawfully disclosed OffDeal's Proprietary Information.

64.    Defendant's misappropriation, dissemination, and continued retention and use of OffDeal's Proprietary Information has caused, and will continue to cause, the Company irreparable harm and, unless enjoined, will continue to cause irreparable harm to the Company's business, including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

65.    Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary and preliminary injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

**THIRD CAUSE OF ACTION**
**(CONVERSION)**

66.    Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

13

67.    By Defendant's misappropriation and retention of OffDeal's Proprietary Information while still an employee of the Company, Defendant knowingly, intentionally and without authority exercised dominion and control over OffDeal's Proprietary Information.

68.    The WEA and PIIA require Defendant, upon termination of his employment, to return to OffDeal all Company property including, but not limited to, OffDeal's Proprietary Information.

69.    Defendant's employment with OffDeal has been terminated.

70.    Upon information and belief, OffDeal's Proprietary Information and intellectual property of the Company remains stored in, among other places, e-mail folders and/or electronic files belonging to Defendant.

71.    Additionally, upon information and belief, Defendant disseminated OffDeal's Proprietary Information to third parties.  OffDeal may never know the extent of Defendant's impermissible disclosures and likely never will know with whom these third parties have shared OffDeal's Proprietary Information.

72.    By virtue of the foregoing misconduct, Defendant has knowingly and intentionally converted OffDeal's Proprietary Information for his own use and benefit.

73.    Defendant's conversion of OffDeal's Proprietary Information has caused the Company irreparable harm and, unless enjoined, will continue to cause irreparable harm to the Company's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

74.    Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law

1632119500.2

duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary and preliminary injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

## FOURTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)

75. Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

76. As a senior employee who had access to OffDeal's Proprietary Information, Defendant owed a fiduciary duty to the Company.

77. Defendant breached his fiduciary duty to the Company when he, among other things, (i) misappropriated OffDeal's Proprietary Information and business relationships for his own financial benefit, and (ii) disclosed OffDeal's Proprietary Information to third parties.

78. Defendant's breach of his fiduciary duty has caused OffDeal irreparable harm and, unless enjoined, will continue to cause irreparable harm to the Company's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

79. Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary and preliminary injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

1632119500.2

## FIFTH CAUSE OF ACTION
### (BREACH OF THE DUTY OF LOYALTY)

80.     Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

81.     Defendant knew or should have known that as a senior employee of the Company with access to OffDeal's Proprietary Information, Defendant owed an undivided duty of loyalty to the Company.

82.     Defendant breached his duty of loyalty to OffDeal when he, among other things, (i) misappropriated OffDeal's Proprietary Information and business relationships for his own financial benefit, and (ii) disclosed OffDeal's Proprietary Information to third parties.

83.     Defendant's breach of his duty of loyalty has caused OffDeal irreparable harm and, unless enjoined, will continue to cause irreparable harm to the Company's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

84.     Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary and preliminary injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

## SIXTH CAUSE OF ACTION
### (FAITHLESS SERVANT)

85.     Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

1632119500.2

86.     Defendant breached his duty of loyalty to OffDeal when he, among other things, (i) misappropriated OffDeal's Proprietary Information and business relationships for his own financial benefit, and (ii) disclosed OffDeal's Proprietary Information to third parties.

87.     During the period of time when Defendant was still employed by OffDeal but was also breaching his duty of loyalty owed to OffDeal, Defendant was acting as a "faithless servant" due to his adverse and disloyal acts.

88.     Because Defendant was a "faithless servant" during some period of time when he was still employed by Plaintiff, Plaintiff is entitled to the forfeiture and return of all compensation paid to Defendant during the period when Defendant was acting as a "faithless servant" due to his adverse and disloyal acts, as well as disgorgement of any compensation he may have receiving by using OffDeal's confidential and proprietary information which he misappropriated and unlawfully converted for his personal financial gain.

89.     Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision (i) requiring Defendant to maintain any and all records relating in any way to his use of OffDeal's confidential and proprietary information, (ii) barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, and (iii) temporarily and preliminarily enjoining from deleting (and requiring the return of) all OffDeal confidential and proprietary information.

**SEVENTH CAUSE OF ACTION**
**(UNFAIR COMPETITION)**

90.     Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

91.     Defendant unfairly competed with the Company, in violation of his contractual and common law duties and Company policies, when he, among other things, (i) misappropriated

OffDeal's Proprietary Information and business relationships for his own financial benefit, and (ii) disclosed OffDeal's Proprietary Information to third parties.

92.     Defendant's misconduct and unfair competition has caused OffDeal irreparable harm and, unless enjoined, will continue to cause irreparable harm to the Company's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

93.     Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary and preliminary injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

## EIGHTH CAUSE OF ACTION
### (QUANTUM MERUIT)

94.     Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

95.     During his employment with OffDeal, Defendant has received a substantial economic benefit as reflected in salary and bonus payments from the Company to Defendant.

96.     While Defendant was an employee of OffDeal and receiving his salary and bonus payments Defendant was deceptively (i) misappropriating OffDeal's Proprietary Information and business relationships for his own financial benefit, and (ii) disclosing OffDeal's Confidential Information to third parties.

18

1632119500.2

97.     Defendant has retained such salary and bonus payments notwithstanding the foregoing misconduct during his employment with the Company, which constituted continuous, material breaches of the PIIA, as well as material violations of Company policy.

98.     It is inequitable and unjust for Defendant to have recognized the benefits of, and impermissibly retained, salary and bonus payments and OffDeal Proprietary Information all while engaging in egregious misconduct constituting material breaches of his contractual obligations to the Company and Company policies.

99.     Defendant's misconduct and unjust enrichment has caused OffDeal irreparable harm and, unless enjoined, will continue to cause irreparable harm to the Company's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

100.     Accordingly, OffDeal is entitled to temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary and preliminary injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

## NINTH CAUSE OF ACTION
### (DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836)

101.     Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

1632119500.2

102.   OffDeal owns and possesses certain confidential and trade secret information, as alleged above, that relate to OffDeal's business.

103.   OffDeal's confidential and trade secret information relate to products and services used, sold, shipped, and ordered in, or intended to be used, sold, shipped and/or ordered in interstate and foreign commerce.

104.   OffDeal has taken reasonable measures to protect the secrecy of its confidential and trade secret information, including the secrecy of the Proprietary Information Defendant has misappropriated.

105.   Defendant improperly misappropriated OffDeal's trade secrets and Proprietary Information by taking same for his personal financial benefit and, upon information and belief, sharing OffDeal's trade secrets and Proprietary Information with OffDeal's competitors.

106.   As a direct and proximate result of Defendant's conduct, OffDeal has suffered and continues to suffer the disruption of its business relationships, dilution of good will, misappropriation of its trade secrets and Proprietary Information, and devaluation of its trade secrets and business.

107.   Defendant's misappropriation of OffDeal's Proprietary Information and trade secrets has caused OffDeal irreparable harm and, unless enjoined, will continue to cause the Company irreparable harm to the Company's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

108.   Defendant's misappropriation of OffDeal's trade secrets and Proprietary Information was intentional, knowing, willful, malicious, fraudulent, and oppressive.  OffDeal is entitled to an award of exemplary damages and reasonable attorneys' fees.

1632119500.2

109.    Because OffDeal's remedy at law is inadequate, OffDeal is entitled to—in addition to damages—temporary and preliminary injunctive relief pending an arbitral decision barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary, preliminary and permanent injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof.

## TENTH CAUSE OF ACTION
### (COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030)

110.    Plaintiff repeats and re-alleges the allegations contained in each of the preceding paragraphs of the Complaint, as though fully set forth herein.

111.    OffDeal is the sole owner of the Proprietary Information unlawfully misappropriated by Defendant and, upon information and belief, disclosed OffDeal's competitors, as described above.

112.    Defendant misappropriated, and upon information and belief disclosed, OffDeal's Proprietary Information without the knowledge or authorization of OffDeal,

113.    Defendant caused the misappropriated Proprietary Information to be transmitted to his personal computer and/or electronic device and, upon information and belief, caused the misappropriated Confidential Information to be transmitted to the computers and/or electronic devices of one or more of OffDeal's competitors.

114.    Upon information and belief, Defendant knew that he lacked authority and/or exceeded his authorized access to obtain and misappropriate such Proprietary Information from OffDeal's computers and computer systems.

1632119500.2

115.   The computers and computer systems from which Defendant obtained this Proprietary Information are "protected computers" pursuant to 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate and/or foreign commerce or communication.

116.   Defendant's conduct, as described above, was intentional, knowing, willful, malicious, fraudulent, and oppressive.

117.   Defendant's actions have caused OffDeal a loss of more than $5,000 in a one year period, as OffDeal has been forced to incur costs for damage assessment and remedial measures.

118.   Moreover, Defendant intentionally, upon information and belief, permanently deleted substantial information relevant to the business of OffDeal which is now irretrievable.

119.   Defendant's conduct, as described above, has caused OffDeal irreparable harm and, unless enjoined, will continue to cause the Company irreparable harm to the Company's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which the Company has no adequate remedy at law.

120.   Because OffDeal's remedy at law is inadequate, OffDeal seeks a temporary and preliminary injunction in aid of arbitration barring Defendant from violating his contractual and common law duties by misappropriating, disseminating, and retaining OffDeal's Proprietary Information, as well as a temporary, preliminary and permanent injunctive relief ordering that Defendant return all such information to OffDeal and not retain any copies thereof, whether in electronic format or otherwise.

1632119500.2

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

A.  An Order temporarily and preliminarily enjoining Defendant, and all persons acting in concert with him, from directly or indirectly:

(i)  destroying, or disposing of any evidence or other materials, in any form, relating to this action and the issues raised herein, including without limitation, all devices, electronic media, emails, text messages, cloud storage, and all copies of any and all documents and/or other materials, containing, identifying, describing, reflecting or referencing OffDeal's confidential, proprietary, or trade secret information, and any and all documents, data and information which was obtained by Defendant from, or by virtue of his employment with OffDeal, including all current or archived media, emails, chats, texts, documents, electronic logs, metadata, storage and directories;

(ii)  breaching or attempting to breach, directly or indirectly, the Worksite Employee Acknowledgment, dated February 5, 2025, and the Proprietary Information and Inventions Agreement, dated May 15, 2025;

(iii)  accessing, disclosing, making available to any person or entity, or using in any way any of OffDeal's confidential, proprietary, or trade secret documents or information.

B.  An Order directing Defendant, and all persons or entities acting in concert with him, to deliver immediately to OffDeal all copies of all documents, materials and other media, whether in paper form or in electronic medium, containing OffDeal's confidential, proprietary, or trade secret information that they possess or have in their custody or control;

C.  An Order directing the parties to engage in expedited discovery, including depositions, in accordance with Fed. R. Civ. P. 26(d)(1);

D.  An Order confirming that confirming that this Court shall retain jurisdiction over this action during the pendency of the arbitration;

E.  With respect to the Ninth and Tenth Causes of Action, reasonable attorneys' fees;

F.  Costs of suit incurred herein to the extent permitted by law; and

G.  For such other and further relief as the Court may deem just and proper.

1632119500.2

Dated:  May 14, 2026                              **DLA PIPER LLP (US)**


By*: /s/ Joseph A. Piesco*
    Joseph A. Piesco, Esq.
    Ryan P. O'Connor, Esq.
    1251 Avenue of the Americas, 27th Floor
    New York, New York 10020-1104
    (212) 335-4500
    joseph.piesco@us.dlapiper.com
    ryan.oconnor@us.dlapiper.com

*Attorneys for OffDeal, Inc.*

1632119500.2