```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   5/20/26
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OFFDEAL, INC.,

                    Plaintiff,

          -against-

SAM MIELKE,

                    Defendant.

---

26-cv-4094 (MKV)

ORDER DENYING IN PART
AND GRANTING IN PART
MOTION FOR EMERGENCY RELIEF
AND SCHEDULING ORDER

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff OffDeal, Inc., "an AI-powered investment bank," has filed the above-captioned action against a "former senior ranking M&A Advisor," Defendant Sam Mielke [ECF No. 1 (the "Complaint" or "Compl.") ¶ 1], together with an application for emergency relief [ECF Nos. 4, 5, 6 ("Mem"), (collectively, the "Application for Emergency Relief")]. Plaintiff seeks a temporary restraining order, preliminary injunction, and expedited discovery. Mem. at 1. In particular, it seeks to "enjoin[] Mielke, and all persons or entities acting in concert with him: (i) from, directly or indirectly, further destroying, or disposing any evidence or other materials, in any form, relating to this action and the issues raised in the Complaint; (ii) from directly or indirectly, using, disclosing and/or further misappropriating OffDeal's confidential and proprietary information; and (iii) breaching or attempting to breach, directly or indirectly, the Worksite Employee Acknowledgement ('WEA') and Proprietary Information and Inventions Agreement ('PIIA') he executed in connection with his employment." *Id.*

Based on Plaintiff's submissions, pursuant to the PIIA, Defendant agreed that he would "hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information," defined in the PIIA as "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to

1

customers or employees) [Defendant] develop[ed], learn[ed] or obtain[ed] during the term of [his] employment that relate to [Plaintiff] or the business or demonstrably anticipated business of [Plaintiff] or that are received by or for Company in confidence [ECF No. 6-3 ("PIIA") § 4.] Defendant further agreed that "during the term of [his] employment," he would "not engage in any activity that is in any way competitive with the business or demonstrably anticipated business of [Plaintiff]," and he would "not assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of [Plaintiff]." PIIA § 6. Defendant also agreed that ""[u]pon termination of [his] employment, [he would] promptly return to [Plaintiff] all items containing or embodying Proprietary Information (including all copies)." *Id*. § 4. Moreover, in the WEA, Defendant agreed, among other things, to "exercise due diligence and reasonable care when handling, maintaining, transferring, disposing or storing" Plaintiff's "private, confidential, and/or proprietary information" [ECF No. 6-4 ("WEA") § 4].

Plaintiff contends that Defendant breached "various covenants" contained in the PIIA and WEA between November 7, 2025 and April 2, 2026. Compl. ¶¶ 2, 33. Specifically, Plaintiff alleges that Defendant, knowing "he would be departing the Company," engaged in the following alleged misconduct:

- On November 7, 2025, Defendant initiated a "mass download" of 127 separate files in a single-day session spanning approximately five hours, plus 11 files (including 7 ZIP archives) reconfigured from private access to "anyone with the link" between November 2025 and March 2026;

- Six of the eleven files Defendant reconfigured to "People with link" visibility were subsequently downloaded by anonymous external users — individuals outside OffDeal's domain accessed the files through the public links Defendant had created — on 16 separate occasions between November 2025 and March 2026[;]

- On at least nine instances between February 2025 and February 2026, Defendant forwarded confidential client materials, internal OffDeal documents, or privileged litigation materials from his work email to his personal email account;

2

- Between March 30, 2026 and April 2, 2026, Defendant deleted an investor contact record and two seller lead records from the Company's [customer relationship management system ("CRM")]. The investor contact deletion (an Investor at a competing private equity firm in active communication with Defendant) occurred at 12:26:27 PM ET on March 30, 2026 — approximately 27 seconds after Defendant received the second of two inbound emails from that Investor regarding multiple OffDeal pipeline opportunities;

- On March 23, 2026, Defendant executed eight (8) consecutive CSV exports of distinct seller lead lists from OffDeal's internal CRM in approximately six minutes, totaling 18,144 prospective target companies across five industry verticals (commercial landscaping, paving, fire & life safety, commercial security / access control, and youth sports training); and

- In March 2026, Defendant exchanged emails with a private equity firm (the "Competitor PE Firm") regarding multiple specific OffDeal pipeline opportunities, including one active sell-side mandate and two opportunities OffDeal was in advanced discussions to take on as exclusive sell-side mandates. The Competitor PE Firm competes with OffDeal for deal flow: like other private equity buyers, it prefers to source acquisitions bilaterally — directly from sellers, without the involvement of a sell-side advisor — in order to avoid the competitive auction dynamics that drive up acquisition prices in OffDeal's sell-side processes. Four of the six industry sectors the Competitor PE Firm separately identified to OffDeal as areas of active interest correspond directly to lead lists Defendant exported from the Company's CRM on March 23, 2026 (commercial paving, commercial landscaping, fire & life safety, and commercial security / access control). Youth sports training, a fifth vertical Defendant exported on the same date, is a sector in which the Competitor PE Firm holds an existing platform investment publicly disclosed on its portfolio website. The Competitor PE Firm is also a registered buyer on OffDeal's listing platform, through which it has access to certain OffDeal pipeline opportunities and teasers; the misappropriation alleged herein concerns OffDeal's internal CRM lead lists and other proprietary records that are not available through the platform.

Compl. ¶ 33; *accord* Mem. at 8.  Plaintiff further alleges that it terminated Defendant's "at-will employment . . . on April 2, 2026, based on its discovery" of this alleged misconduct.  Compl. ¶ 38.  Plaintiff further alleges that, after terminating Defendant, it "uncovered" evidence that Defendant had "deleted Company information in order to sabotage the Company's ability to conduct certain high-profile and potentially lucrative deals."  *Id.* ¶ 39.  According to Plaintiff, "[w]hen confronted with this evidence, Defendant denied that he had done anything wrong and claimed that he had 'wiped' all of his devices . . . ." *Id.* ¶ 40.

3

As Plaintiff acknowledges, in this Circuit, a party seeking a temporary restraining order must show, at minimum, "(1) either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor;' and (2) the likelihood of irreparable harm in the absence of such an order." *HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F. Supp. 2d 303, 306 (S.D.N.Y. 2010) (quoting *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir. 1985)); *see* Mem. at 10–11; *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction."); *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (to obtain a preliminary injunction, a party must show (1) "a likelihood of success on the merits," (2) "a likelihood of irreparable injury," (3) "the balance of hardships tips in the plaintiff's favor," and (4) that the "public interest would not be disserved by the issuance of an injunction"). While Plaintiff argues it has made this showing, Defendant has not yet had any opportunity to respond to its motion, and the Court has reservations about its jurisdiction both to issue some of the preliminary relief Plaintiff seeks and to entertain this case going forward.

As Plaintiff's own Complaint and Application for Emergency Relief establish, the parties are bound by a broad arbitration agreement [ECF No. 6-5 (the "Arbitration Agreement")]. The Arbitration Agreement expressly provides that both Plaintiff and Defendant "agree to use binding arbitration as the ***sole and exclusive*** means to resolve ***all disputes*** that may arise between" them. Arbitration Agreement at 1 (emphases added). It provides that Plaintiff "specifically waive[s] and relinquish[es]" its "rights to bring a claim against [Defendant] in a court of law." *Id*. ¶ 1. The Arbitration Agreement expressly "applies to claims that [Plaintiff] might bring against [Defendant]" for the type of claims Plaintiff asserts in the Complaint, including "trade secrets, breach of a confidentiality Agreement, [and] breach of a contract." *Id*. ¶ 2. Moreover, the

4

Arbitration Agreement provides an enumerated and exhaustive list of "[t]he only exceptions to the requirement" to arbitrate, none of which applies here, such as "claims arising under the National Labor Relations Act," claims for workers compensation, civil rights claims, and "other claims that are not subject to arbitration under current law." *Id.* ¶ 3.

Plaintiff asserts that it has filed the Complaint and Application for Emergency Relief "in aid of arbitration." Compl. ¶ 2; *accord* Mem. at 4, 10, 18. The Second Circuit has held that, in such a circumstance, a district court has authority to issue preliminary injunctive relief "to preserve the status quo pending arbitration." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990). Since *Blumenthal*, some courts in this Circuit have observed that "temporary restraining orders and preliminary injunctions may be, and frequently are, granted in aid of arbitration . . . ." *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) (quoting *Banus v. Citigroup Global Mkts. Inc.*, 2010 WL 1643780, at *8 (S.D.N.Y. Apr. 23, 2010)). The courts in *Blumenthal* and its progeny have reasoned that "[a]rbitration can become a hollow formality if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *Blumenthal*, 910 F.2d at 1054 (internal quotation marks omitted); *see Rex Med.*, 754 F. Supp. 2d at 621; *Banus v. Citigroup Global Mkts. Inc.*, 2010 WL 1643780, at *8; *see also Credit Suisse Sec. (USA) LLC v. Ebling*, 2006 WL 3457693, at *3 (S.D.N.Y. Nov. 27, 2006).

Here, Plaintiff does not argue that, absent emergency relief, it may be irreparably harmed by the "loss of [its] right to have [the parties'] dispute decided by arbitration." *Genius Grp. Ltd. v. LZG Int'l, Inc.*, 2025 WL 815346, at *5 (S.D.N.Y. Mar. 13, 2025). Rather, Plaintiff argues that it will be irreparably harmed by "the loss of confidential and proprietary information" and "the loss of business, client, and customer goodwill." Mem. at 12, 13. Plaintiff also cites Defendant's acknowledgement in the PIIA that breach would "cause irreparable harm to Company." *Id.* at 13

5

(quoting PIIA § 9).  However, Defendant's alleged breaches of the various covenants between the parties, and the resulting alleged harms Plaintiff cites in support of its Application for Emergency Relief, are precisely the type of disputes that Plaintiff's own submissions suggest Plaintiff has agreed should be resolved, solely and exclusively, through arbitration.  *See* Arbitration Agreement at 1; Mem. at 10–19.  Moreover, it is "firmly established" that "arbitrators . . . have the authority to order interim relief" to protect their final award on the merits.  *Brit. Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 516 (S.D.N.Y. 2000); *see Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 204 (S.D.N.Y. 2002).

Plaintiff also "seeks expedited discovery so that it can identify the full scope of Defendant's [alleged] misconduct."  Mem at 18.  Plaintiff invokes the Court's "broad power to grant expedited discovery requests" under Rule 26 of the Federal Rules of Civil Procedure.  *Id.*  However, it is far from clear that any discovery under the Federal Rules of Civil Procedure will be available in this case.  *See Oriental Com. & Shipping Co. v. Rosseel, N.V.*, 125 F.R.D. 398, 400 (S.D.N.Y. 1989).  Plaintiff has not even argued, much less "demonstrate[d]," that "extraordinary circumstances" justify such discovery "in aid of arbitration."  *Id*.

Accordingly, in light of these considerations, Plaintiff's Application for Emergency Relief [ECF Nos. 4, 5, 6] is DENIED IN PART and GRANTED IN PART.  Specifically, the Court will grant Plaintiff a limited, prohibitory temporary restraining order "to preserve [the] existing situation in *statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."  *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842 (2d Cir. 1962)); *see Blumenthal*, 910 F.2d at 1054.  Specifically, IT IS HEREBY ORDERED that Defendant shall not destroy or conceal materials that might be evidence relevant to this litigation or a future arbitration proceeding.  *See Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir.

2001) (a party has an "obligation to preserve evidence" once he "has notice that the evidence is relevant to litigation or . . . may be relevant to future litigation"). Without passing on whether any such alleged breaches have occurred, IT IS FURTHER ORDERED that Defendant shall not breach the PIIA and WEA insofar as his obligations under those agreements survived his termination. Plaintiff's request for expedited discovery at this stage is DENIED.

IT IS FURTHER ORDERED that the Court will hold a hearing on Plaintiff's request for a preliminary injunction on **June 8, 2026 at 11:30 a.m.** Plaintiff has not yet filed proof of service on Defendant, and the Court is allowing time for Defendant to respond to Plaintiff's Application for Emergency Relief and for both parties to file pre-hearing submissions consistent with the Court's Individual Rules of Practice. *See* Rule 4(D) (the Court generally follows its procedures for non-jury trials in resolving a motion for a preliminary injunction).

IT IS FURTHER ORDERED that Defendant shall file its opposition to the motion for a preliminary injunction by May 26, 2026. IT IS FURTHER ORDERED that both parties must provide the direct testimony of any witnesses by affidavit by May 26, 2026. Both parties must submit a list of any affiants they intend to cross-examine live at the hearing by May 29, 2026. All documentary exhibits and other evidence must be filed on the docket in advance of the hearing by May 29, 2026. The parties shall file objections by June 2, 2026.

IT IS FURTHER ORDERED that, at the hearing, Plaintiff shall be prepared to address why this case should proceed before this Court given (1) the Arbitration Agreement, and (2) that the gravamen of this case is a breach of contract between two citizens of New York.

Any request for an extension or adjournment must be filed on the docket on ECF at least 48 hours before the deadline.

**The parties are on notice that failure to comply with court orders, the Federal Rules of Civil Procedure, the Local Rules, and this Court's Individual Rules may result in**

sanctions, including: monetary penalties on counsel and the parties themselves; preclusion of claims, defenses, evidence, and motion practice; and the case-terminating sanctions of dismissal and default judgment.

**SO ORDERED.**

**Date:  May 20, 2026**
    **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**